# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 17-cv-2819-WJM

MELISSA M. HAWKINS,

    Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION,[1]

    Defendant.

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Melissa M. Hawkins ("Hawkins") challenges the final decision of Defendant, the Social Security Administration ("Administration"), denying her application for supplemental security income. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Hawkins was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision is vacated and this case is remanded to the Administration for further proceedings consistent with this order.

## I. BACKGROUND

Hawkins was born in 1980 and was 28 years old on the alleged onset date of

---

[1] The Social Security Administration no longer has a commissioner nor a lawful acting commissioner. *See* Letter from Thomas H. Armstrong, General Counsel of the Government Accountability Office, to President Donald Trump (Mar. 6, 2018), *available at* https://www.gao.gov/assets/700/690502.pdf (last accessed Aug. 8, 2018). Lacking any other alternative, the Court *sua sponte* substitutes the Social Security Administration itself as the proper defendant.

June 14, 2009. (Administrative Record ("R.") [ECF No. 11] at 40.) Her highest level of educational achievement was high school graduation. (R. at 253.) In the fifteen years preceding the alleged onset date, she worked as a dietary aide and a dishwasher. (R. at 45.)

Hawkins applied for supplemental security income on April 6, 2011. (R. at 40.) She claimed she is disabled due to back problems, a herniated disc, and a pinched nerve. (*Id.*) Her application was denied on September 29, 2011. (R. at 46–47.) She requested and received a hearing in front of an ALJ, Richard Maddigan. (R. at 27.) On October 15, 2012, he issued a written decision upholding the Administration's denial of benefits. (R. at 13.) Hawkins ultimately appealed that decision to this Court. (*See Hawkins v. Colvin*, No. 14-cv-1102-AP (D. Colo., filed Apr. 17, 2014).) Before the Court could reach a decision, the Administration moved to remand the matter for additional findings and conclusions, and the Court granted that order, thus terminating the appeal. (R. at 309.)[2]

Hawkins received a new hearing in front of a new ALJ, Debra Boudreau. (R. at 286.) On April 8, 2016, she issued a written decision in accordance with the Administration's five-step sequential evaluation process.[3]

At step one, the ALJ found that Hawkins had not engaged in substantial gainful

---

[2] The reasons for the remand are not relevant to this case as it currently stands.

[3] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his or her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

activity since April 6, 2011.  (R. at 247.)

At step two, the ALJ found that Hawkins "has the following severe impairments: lumbar degenerative disc disease, obesity, borderline intellectual functioning, and depressive disorder with avoidant personality traits."  (*Id.*)

At step three, the ALJ found that Hawkins's impairments, while severe, do not meet or medically equal any of the "listed" impairments in the Social Security regulations.  (R. at 248.)

Before proceeding to step four, the ALJ assessed Hawkins's residual functional capacity ("RFC").  The ALJ concluded that Hawkins possesses the RFC

> to perform medium work as defined in 20 CFR 416.967(c). Thus, the claimant can occasionally lift, carry, push or pull 50 pounds at a time, and frequently lift, carry, push, and/or pull objects weighing up to 25 pounds.  The claimant can walk for six hours during an eight-hour workday, stand for six hours during an eight hour workday, and can stand or walk for a total of six hours during an eight-hour workday.  The claimant can sit for six hours total during an eight-hour workday.  The claimant should avoid ladders, unprotected heights, and avoid close proximity to dangerous moving machinery.  The claimant is able to understand and remember simple instructions that can be learned and master[ed] in 30 days.  The claimant can sustain concentration, persistence, and pace for those instructions as long as the work is in a low stress environment involving routine work with no frequent or prolonged social interaction[s].  The claimant can tolerate supervision[ and] routine work changes, and the claimant can plan and set simple goals.  The claimant can travel and is able to avoid workplace hazards.

(R. at 252.)  Then, at step four, the ALJ concluded that Hawkins's RFC precludes her from returning to her past relevant work.  (R. at 258.)

At step five, the ALJ found that Hawkins's RFC permits her to work as a "farm worker II," "industrial cleaner," and "hand packager," and that each of these jobs exists

3

in sufficient numbers in the regional and national economy. (R. at 260.)

Accordingly, the ALJ found that Hawkins is not entitled to Social Security benefits. (R. at 260–61.) Hawkins appealed to the Social Security Appeals Council, which denied review. (R. at 274.) Hawkins then filed this action seeking review of the ALJ's April 8, 2016 decision. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Court reviews the Administration's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is the amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Administration's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. ANALYSIS

Hawkins presents five purportedly distinct arguments for vacating and remanding the ALJ's decision. (ECF No. 14 at 12–29.)[4] The Court finds that it need only address the arguments Hawkins labels as "Issue 3" and "Issue 5," which relate to the physical

---

[4] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination.

4

limitations in the RFC. Understanding these arguments first requires understanding the medical opinion evidence about Hawkins's physical capabilities.

In September 2011, Tim Schofield, M.D., evaluated Hawkins's disability application materials and opined that, in an eight-hour workday, Hawkins can: lift or carry up to 20 pounds occasionally and 10 pounds frequently; stand, walk, and/or sit, with normal breaks, for 6 hours each; climb ramps and stairs frequently; climb ladders, ropes, and scaffolds occasionally; and kneel, crouch, and crawl frequently. (R. at 43–44.)

At Hawkins's counsel's request, Velma Campbell, M.D., performed a consultative examination of Hawkins in July 2012. (R. at 154.) Dr. Campbell reviewed records of previous MRIs (all reportedly showing some disc protrusion at the L5/S1 level) and what appear to be primary care visits between 2009 and 2012. (R. at 155–56.) Dr. Campbell performed a full assessment of Hawkins's physical abilities, diagnosed chronic thoracic and lumbar pain with a history of degenerative disc disease, and assessed the following limitations (presumably with reference to an eight-hour workday) due to lumbar symptoms:

> Standing and walking would be limited to 15–20 minutes at a time, and up to 3 hours a day. Postural activities such as bending, stooping, and squatting would be limited to 2 hours a day. Lifting and carrying would be limited to 20# less than 1 hour a day, and 10# up to 3 hours a day. There are no limitations in use of the upper extremities . . . . Sitting is not limited in total duration but change of position would be advisable about every half hour to assist with management of back pain. She is independent in activities of daily living, and can perform household work within the described limitations.

(R. at 157.)

5

Hawkins underwent an MRI of her lumbar spine in March 2015, at the direction of her treating physician, Kenneth Danylchuk, M.D. (R. at 848, 852.) The MRI revealed mild diffuse disc bulges at L1/L2 through L4/L5, facet hypertrophy at L3/L4 through L5/S1, and a moderate diffuse disc bulge with moderate left and mild right neural foraminal narrowing at L5/S1. (*Id.*)

At the Administration's direction, Hawkins underwent a physical abilities exam in May 2015, performed by Timothy Moser, M.D. (R. at 435.) Dr. Moser administered essentially the same tests that Dr. Campbell administered three years earlier. Dr. Moser diagnosed degenerative disc disease of the lumbar spine and opined that Hawkins can lift and carry 50 pounds occasionally and 25 pounds frequently, with no other restrictions beyond avoiding heights and heavy machinery. (R. at 438.)[5]

In December 2015, Dr. Danylchuk (the treating physician) filled out an evaluation form for Hawkins, at the request of her lawyer. (R. at 254, 852–53.) Dr. Danylchuk diagnosed Hawkins with "chronic thoracic and lumbar pain, with history of degenerative disc disease." (R. at 852.) He opined that Hawkins, during an eight-hour workday, can: carry no more than 10 pounds for up to one-third of the day; sit no more than 30 minutes at a time and no more than 6 hours total; stand no more than 15 minutes at a time and no more than 3 hours total; and stoop, squat, crawl, or kneel only up to 1 hour. (R. at 852–53.)

The physical limitations in the ALJ's RFC are a combination of Dr. Moser's opinions about how much and how frequently Hawkins can lift and carry, and about

---

[5] On a separate form, apparently filled out on the same day, Dr. Moser opined that Hawkins can lift and carry 21–50 pounds frequently (not occasionally) and up to 20 pounds continuously (not just frequently). (R. at 439.) No party addresses this inconsistency with his other opinion.

heights and heavy machinery; and Dr. Schofield's opinions about the length of time Hawkins can sit, stand, and walk during an eight-hour workday. (*See* R. at 252.)

With this background, the Court turns to Hawkins's "Issue 3." Hawkins argues that the ALJ did not provide sufficient reasons for disregarding Dr. Schofield's opinions about how much and how frequently Hawkins can lift and carry, particularly in favor of Dr. Moser's opinions. (ECF No. 14 at 19–21.) *See also Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) ("When assessing a medical opinion, the ALJ must . . . give good reasons for the weight he assigns to the opinion."). The only reason the ALJ gave for not following Dr. Schofield's opinion was that Dr. Schofield "did not have the opportunity to review the entire medical record" when he rendered his opinion in 2011. (R. at 256.)

Hawkins concedes that, in the abstract, an ALJ may validly judge a medical source opinion based on the amount of the claimant's medical record that the source reviewed. (ECF No. 14 at 20.) But Hawkins argues that the validity of this consideration in any particular case is contextual: "Certainly, [the ALJ's] opinion might be invalidated if [the claimant's] condition had changed after [the ALJ] issued [his or her] opinion. But the ALJ [in this case] did not find that [Hawkins's] condition changed." (*Id.*) The Administration does not respond to this argument (*see* ECF No. 15 at 12–13), and the Court finds it persuasive.

"[T]he extent to which a medical source is familiar with the other information in [the claimant's] case record" is a "relevant factor[]" for the ALJ to consider. 20 C.F.R. § 416.927(c)(6). However, unfamiliarity with some portion of the record is not simply a reason the ALJ can invoke and then move on. There must be something about the remainder of the record—such as a change in condition, as Hawkins suggests—that

7

transforms a medical source's unfamiliarity with the record from a neutral fact into a fact that matters.

Here, the ALJ nowhere explains how the remainder of the record might have mattered to Dr. Schofield's analysis. The Court further notes that the ALJ implicitly adopted Dr. Schofield's limitations on sitting, standing, and walking, which are more restrictive than Dr. Moser's, yet without explaining why Dr. Schofield's opinions were valid in that aspect despite his unfamiliarity with developments after 2011.

The Court need not address whether the ALJ's evaluation of Dr. Schofield's opinion, standing alone, merits reversal because the ALJ opinion contains additional problematic analyses of medical source opinions, particularly that of Dr. Danylchuk, Hawkins's treating physician for back pain. The ALJ gave "little weight" to that opinion. (R. at 258.) This is the focus of Hawkins's "Issue 5."

The Administration must give "controlling weight" to "a treating source's medical opinion" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 416.927(c)(2). Hawkins concedes that Dr. Danylchuk's opinion does not satisfy the controlling weight test, but emphasizes that the ALJ must still evaluate it according to the regulatory factors (*i.e.*, 20 C.F.R. § 416.927(c)(2)(i)–(ii), (c)(3)–(6)) and provide good reasons for the weight actually given. (ECF No. 14 at 25.) *See also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."); *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) ("Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step

8

in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned."). Hawkins argues that the ALJ did not provide good reasons for assigning little weight to Dr. Danylchuk. The Court agrees.

The first reason the ALJ gave for discounting Dr. Danylchuk's opinion is that "there are no clinical examination findings to support the areas that Dr. Danyl[c]huk marked in his evaluation form." (R. at 258.) But Dr. Danylchuk ordered an MRI earlier in the same year. (R. at 848.) If the ALJ means to say that Dr. Danylchuk did not describe how the MRI's findings influenced his opinion, the ALJ is correct, but that is not the same as concluding that no supporting clinical examination findings exist. Moreover, if the ALJ meant to say that the MRI findings do not support Dr. Danylchuk's opinions, it is unclear how the ALJ could reach that conclusion absent medical expert interpretation of the MRI.

The second reason the ALJ gave for discounting Dr. Danylchuk's opinion is that it was "inconsistent with the findings and opinions of the other consultative examiners of record." (R. at 258.) But the only other consultative examining physicians were Dr. Campbell and Dr. Moser. Dr. Danylchuk's opinion is more consistent than inconsistent with Dr. Campbell's opinion. They both agree that Hawkins's lifting and carrying ability is substantially less than the occasional 50 pounds and frequent 25 pounds assigned by Dr. Moser. (*Compare* R. at 157, 852 *with* R. at 438.) Dr. Campbell believes that bending, stooping, and squatting should be limited to 2 hours a day (R. at 157), as compared to Dr. Danylchuk's 1 hour (R. at 853), and in contrast to Dr. Moser's

9

total lack of limitations in this area (R. at 438). Dr. Campbell and Dr. Danylchuk agree that Hawkins should be allowed to move around after 30 minutes of sitting (R. at 157, 852), while Dr. Moser announces that "[t]here are no restrictions for sitting" (R. at 438).

In short, Dr. Moser's opinion is the outlier. That does not mean it cannot be more persuasive than other opinions. But "[w]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Given that the weight of consultative examining opinion leans toward Dr. Danylchuk's more restrictive view, it is plain that the ALJ's analysis proceeded from the wrong direction on this issue.

The third reason the ALJ gave for discounting Dr. Danylchuk's opinion is that it was inconsistent with "his own clinical findings" (R. at 258), citing a treatment note from the post-MRI follow-up visit (R. at 653) and citing the MRI report itself (R. at 845). Concerning the treatment note, it is not clear what the ALJ finds inconsistent, although, earlier in her opinion, the ALJ notes Dr. Danylchuk's statement from the same treatment note that, "[a]t age 34[,] it's in her interest not to be very aggressive [presumably referring to treatments such as back surgery]." (R. at 653; *see also* R. at 254.) Assuming for argument's sake that this was the inconsistency the ALJ perceived, the Court sees no obvious inconsistency and the ALJ has not elaborated. As for the MRI results themselves, the ALJ again does not explain the inconsistency, and it is otherwise unclear how the ALJ could interpret the MRI results herself.

The fourth reason the ALJ gave for discounting Dr. Danylchuk's opinion is that it is inconsistent with Hawkins's "activities of daily living." (R. at 258.) This refers to a

10

finding earlier in the opinion that Hawkins "is able to perform her own personal care, drive, cook, take care of her three children, walk 3 mile[s] 2–3 times per week, make the beds, watch television, shop, do the laundry, do light household cleaning and maintenance, [and] visit with family and friends."  (R. at 256.)  Again, there is no explanation of how any of this is inconsistent with, say, a restriction to lifting no more than 10 pounds for up to one-third of an eight hour workday, a restriction to crawling or kneeling for only up to 1 hour in a workday, etc.  (R. at 852–53.)  Or, from a different perspective, there is no explanation of how these abilities are consistent with Dr. Moser's opinion that Hawkins can carry 25 pounds frequently and has essentially no limitations beyond avoiding heights and heavy machinery.  (R. at 438.)

The fifth reason the ALJ gave for discounting Dr. Danylchuk's opinion is that it is inconsistent with "the longitudinal record."  (R. at 258.)  This apparently refers to the picture of Hawkins's impairments that has emerged over many years.  But the ALJ never explains what the passage of time has made clear about Hawkins's impairments, or how that clarity is inconsistent with Dr. Danylchuk's opinions.  If there is any inconsistency with the record as developed over many years, it is Dr. Moser's opinion in 2015, which is far less restrictive then the opinions from Dr. Schofield in 2011, Dr. Campbell in 2012, and Dr. Danylchuk in 2015.

Hawkins's argument that the ALJ failed to give good reasons for assigning little weight to Dr. Danylchuk's opinion is well-taken.  In combination with the ALJ's deficient analysis of Dr. Schofield's opinion, the Court is convinced that the ALJ's error was not harmless—and in any event the Administration does not argue harmless error.[6]

---

[6] The Administration's only harmless error argument relates to the mental capacity

11

Remand is required so that the ALJ may properly weigh all of the relevant evidence. The Court vacates and remands for this reason only; the Court does not address Hawkins's Issues 1, 2, or 4. The Court expresses no opinion on these arguments and neither party should take the Court's silence as tacit approval or disapproval of them. The Court also does not intend by this opinion to suggest the result that should be reached on remand. Rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Administration's decision is VACATED and this case is REMANDED to the Administration for rehearing. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 26th day of November, 2018.

BY THE COURT:

---

portion of the ALJ's RFC. (ECF No. 15 at 11–12.) The Court does not address Hawkins's attack on that portion of the RFC.

                                          _____
William J. Martínez
United States District Judge